IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **TERESA LUNETE YARBROUGH,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Civil Action No.: 5:12-CV-00754-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of** } | |
| **Social Security,** } | |
| } | |
| Defendant. } | |

**MEMORANDUM OF DECISION**

Plaintiff Teresa Lunete Yarbrough brings this action, pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claims for disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also* 42 U.S.C. §§ 405(g), 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

This action arises from Plaintiff's applications for disability, DIB, and SSI benefits, filed protectively on October 21, 2009, alleging disability beginning January 2, 2008. (Tr. 10, 124-129). Plaintiff later amended her alleged onset date of disability to April 1, 2009. (Tr. 140). The Social Security Administration denied Plaintiff's claims on December 18, 2009. (Tr. 69). Unsatisfied with the Commissioner's decision, Plaintiff then requested a hearing before an Administrative Law Judge. (Tr. 77). Plaintiff's request was granted, and a video hearing was

held on August 18, 2011 before Administrative Law Judge Patrick Digby ("ALJ"). (Tr. 34-56). In his decision dated October 3, 2011, the ALJ concluded that Plaintiff had not been under a disability within the meaning Sections 216(i), 223(d) and 1614(a)(3)(A) of the Act since October 21, 2009, the date Plaintiff's application was filed. (Tr. 19).  The Appeals Council then denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3), thus making the Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C §§ 405(g), 1383(c).

Plaintiff was fifty years of age at the time of the ALJ's decision. (Tr. 124). Plaintiff attended school through the eighth grade (Tr. 183), and has prior work experience as a nursing assistant, fast food worker, and poultry worker. (Tr. 50, 166).  Plaintiff alleged disability based on a bleeding ulcer, high blood pressure, joint pain, memory problems, and lack of concentration. (Tr. 59, 177).

A review of Plaintiff's medical records from 2007 onward reveals numerous emergency room visits for largely unrelated events. (Tr. 298-415).  During the four-year period spanning 2007 and 2011, Plaintiff visited the emergency room of Athens Limestone Hospital ("Athens Limestone") on no fewer than ten separate occasions. *Id.* The first of these visits occurred on September 24, 2007, when Plaintiff was treated for acute bronchitis. (Tr. 301).  Then on January 31, 2008, Plaintiff was treated for esophagitis after going to the ER with complaints of nausea. (Tr. 305-08). Her medical records at that time note a past history of bleeding ulcers. (Tr. 305). Just a few days after this incident, Plaintiff was prescribed Prilosec to treat anemia after lab tests dated February 2, 2008 indicated a low blood count. (Tr. 323). The following day, doctors at Athens Limestone diagnosed Plaintiff with peptic ulcers. (Tr. 331).  On April 23, 2008, Plaintiff was again admitted to Athens Limestone, where she was diagnosed with hypertension and

osteoarthritis in her right knee. (Tr. 337-38). Plaintiff was prescribed Dyazide to treat the hypertension and given an anti-inflammatory (Mobic) for her knee. (Tr. 338-39). On May 15 of the following year—roughly six weeks after her alleged onset date—Plaintiff was again admitted to Athens Limestone, this time with complaints of headaches. (Tr. 345). Finding that there was no dangerous cause for the headaches, Plaintiff was promptly discharged. *Id.*

Three months before she filed her application, Plaintiff underwent a DDS examination performed by Dr. John Lary on July 13, 2009. (Tr. 205-13). After reviewing Plaintiff's medical history as well as his own observations from the examination, Dr. Lary concluded that Plaintiff had the following diagnoses: hypertension, history of bleeding peptic ulcer disease, osteoarthritis, and obesity. (Tr. 205, 208). Dr. Lary noted that Plaintiff's hypertension was presently uncontrolled because Plaintiff had run out of her blood pressure pills. (Tr. 2). When Dr. Lary questioned Plaintiff about her history of bleeding peptic ulcer disease, Plaintiff indicated she had not experienced a problem with bleeding ulcers for around four years. (Tr. 206). With regard to Plaintiff's obesity, Dr. Lary noted "essentially normal range of motion" with the exception of "mildly restricted range of hip flexion." (Tr. 207). Finally, Dr. Lary found that Plaintiff's osteoarthritis was not treated with any medication or assistive device, and indeed the range of motion in her joints was "preserved." (Tr. 205, 208). Ultimately, Dr. Lary concluded that Plaintiff's ability to "sit, stand, walk, lift, carry, bend, squat, reach, see, hear, speak, understand, and manipulate small objects [was] unimpaired." (Tr. 208).

Three days later, Plaintiff underwent a physical RFC assessment performed by Dr. Robert Heilpern on behalf of DDS. Dr. Heilpern noted Plaintiff's allegations, but found that Plaintiff was capable of walking normally, performing a "heel/ toe walk," and getting up from squatting position. (Tr. 215). Dr. Heilpern found that Plaintiff was capable of lifting twenty-five pounds

frequently and fifty pounds occasionally. (Tr. 215). Dr. Heilpern concluded that Plaintiff's allegations were only "partially credible," as objective evidence did not support the level of severity alleged. (Tr. 219).

On November 16, 2009—less than a month after she filed her application—Plaintiff visited Med Care East with complaints of vomiting and leg cramps. (Tr. 246). Plaintiff was advised to go directly to the ER (Tr. 245), where she was diagnosed with dizziness, headache, and hypokalemia. (Tr. 373). The doctors at Athens Limestone found neither the dizziness nor the headache to be dangerous, and advised Plaintiff to increase her potassium intake to treat the hypokalemia. (Tr. 373-74). Plaintiff was also prescribed Clonidine for her blood pressure. *Id.*

Plaintiff underwent her final medical examination for DDS on December 18, 2009. On that date, Dr. Gloria Roque examined Plaintiff, summarized her activities of daily living, and then concluded that Plaintiff's alleged memory and concentration problems were "related to excessive sleepiness rather than a primary mental condition." (Tr. 242).

On December 22, 2009, more than two months after Plaintiff filed her application for disability, Plaintiff first began seeking medical care from Dr. Christopher Cole, a family practitioner at Central North Alabama Health Services ("Central North"). (Tr. 261). Between that date and September 17th of the following year, Plaintiff was examined by Dr. Cole on a total of four occasions. (Tr. 255-62). Central North records show diagnoses of hypertension, arthritis, headaches, anemia, and a history of ulcers. (Tr. 250-61). Dr. Cole's treatment records indicate Plaintiff voiced no discrete complaints, but rather visited the clinic for "routine" reasons such as the evaluation of her blood pressure. (Tr. 255, 257, 259, 261). Plaintiff's medication usage record from Central North indicates that Plaintiff was taking Clonidine, Norvasc, Aciphex, Lisinopril, and Protonix. (Tr. 251). Although Dr. Cole refilled her blood pressure medication, he

did not provide any treatment for her arthritis. (Tr. 250-62). On August 1, 2011, Dr. Cole issued a Medical Source Opinion summarizing his clinical findings related to Plaintiff's RFC. (Tr. 416-17). In his MSO, Dr. Cole opined that Plaintiff was capable of lifting ten pounds frequently and twenty-five pounds occasionally, as well as standing, sitting, and walking in an eight-hour workday.[1] Dr. Cole readily admitted that he completed the MSO based primarily on Plaintiff's subjective complaints. (Tr. 417). Ten days later, Dr. Cole submitted a letter clarifying his treatment relationship with Plaintiff. (Tr. 418). In this letter, Dr. Cole referred to Plaintiff as "a new patient," and stated that Plaintiff's medical condition was prohibitive of her being able to work an eight-hour workday. *Id.*

In August 2010, Plaintiff began seeking medical care from Dr. Chandra Koneru, a doctor of internal medicine at North Alabama Primary Care. (Tr. 265-96). Between August 3, 2010 and May 9, 2011, Plaintiff saw Dr. Koneru on five occasions, primarily for high blood pressure and pain in her legs. (Tr. 265, 268, 271, 273, 276). Medical records from North Alabama Primary note diagnoses of hypertension, anemia, lower back pain, sleep apnea, hip pain, peptic ulcers, abnormal glucose, and obesity. (Tr. 266). Dr. Koneru also referred Plaintiff to the Sleep Center at Athens Limestone, where she was evaluated and then diagnosed with sleep apnea. (Tr. 392-93).

During her alleged period of disability, Plaintiff claimed to suffer "pain all over [her] body, especially in [her] lower back." (Tr. 177). Plaintiff asserted she was unable to stand or walk for any prolonged period of time due to "pain and swelling in her hips, legs, and ankles" as well as her legs giving out on her. (Tr. 159, 177). Plaintiff also alleged difficulty remembering things and maintaining concentration. (Tr. 177). Plaintiff's physical activities during her alleged period of disability included taking care of herself (Tr. 42), cleaning her house (Tr. 43, 158),

---

[1] Although the ALJ characterizes the MSO as allowing for a limited range of medium work, it is more likely that the MSO allows for a range of light work. 20 C.F.R. § 404.1567.

5

caring for her three grandkids (Tr. 40, 157), driving (Tr. 41), and even applying for work as a cook after her alleged onset date. (Tr. 42).  In terms of her mental state during her period of disability, Plaintiff admitted she could pay attention for three to four hours at a time, and she had no difficulty with reading or playing bingo or cards. (Tr. 160).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity " is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R.

§ 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ determined that: (1) Plaintiff has not engaged in substantial gainful activity since the amended alleged onset of disability date (Tr. 12); (2) Plaintiff is afflicted with several severe impairments—disorders of the back, hip problems, right knee osteoarthritis, hypertension, and obesity (*Id.)*; and (3) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1." (Tr. 13). After consideration of the record, the ALJ then concluded that Plaintiff has the residual functional capacity to lift/carry fifty pounds occasionally, and twenty-five pounds frequently. (Tr. 14). The ALJ determined that although Plaintiff is unable to work on ladders or scaffolding, she is capable of sitting or standing for six hours out of an eight-hour workday. (*Id.*). Finally, the ALJ found that Plaintiff is capable of performing past relevant work as a nursing assistant, fast food worker, and poultry worker. (Tr. 18). Based upon this analysis, the ALJ concluded that Plaintiff is not disabled. (Tr. 19).

### III. Plaintiff's Argument for Reversal

Plaintiff asks this court to reverse the decision of the ALJ and remand this case for further proceedings. (Pl.'s Mem. 12). To that end, Plaintiff presents two distinct arguments. First, Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Cole. (Pl.'s Mem. 5-9). Second, Plaintiff contends the ALJ committed error by failing to properly evaluate her pain testimony. (Pl.'s Mem. 9-12). For the reasons discussed below, the court finds Plaintiff's arguments are unpersuasive.

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See*

8

*Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence and that correct legal standards were applied. The court addresses Plaintiff's arguments below.

      **A.     The ALJ Accorded Proper Weight to the Testimony of Dr. Cole.**

Plaintiff's first argument is that the ALJ failed to accord sufficient weight to the opinion of Dr. Cole. (Pl.'s Mem. 5-9). Plaintiff contends that this alleged error resulted in an incorrect determination of her RFC. *Id.* To that end, Plaintiff argues that the ALJ committed error by: (1) finding that Dr. Cole was not Plaintiff's treating physician; and (2) failing to articulate good cause for discounting Dr. Cole's opinion.

          **1.     The ALJ Was Not Required to Give Considerable Weight to the Opinion of Dr. Cole Because He Was Not a Treating Physician.**

As a preliminary matter, Plaintiff argues that—contrary to the ALJ's determination—Dr. Cole was Plaintiff's treating physician, and therefore his opinion was presumptively entitled to substantial weight. (Pl.'s Mem. 5). Specifically, Plaintiff contends that the "ALJ's finding that Dr. Cole does not have a longstanding treatment relationship with the Plaintiff is not supported by the evidence." (Pl.'s Mem. 7). However, Plaintiff's argument is without merit because the ALJ's determination that Dr. Cole lacks a longstanding treatment relationship with Plaintiff is supported by substantial evidence.

Without question, the opinion of a treating physician is entitled to considerable weight unless good cause is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.

1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). This is so because a treating physician is uniquely positioned to provide "a detailed, longitudinal picture of the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527. However, Social Security regulations provide that a physician is only a treating source if that physician has "an ongoing treatment relationship" with the Plaintiff. 20 C.F.R. §§ 404.1502, 416.902. Concomitantly, a physician is not considered a treating source if the doctor-patient relationship is based on a desire to buttress a disability claim rather than a medical need for treatment. *Id.*

In this case, substantial evidence supports the ALJ's determination that Plaintiff did not have an ongoing treatment relationship with Dr. Cole. Plaintiff filed her application for disability on October 21, 2009, and began seeking medical care from Dr. Cole on December 22, 2009. (Tr. 261). Thus, Plaintiff did not establish care with Dr. Cole until more than two months *after* she filed her application for disability, and nearly nine months after her amended onset of disability date in April. (Tr. 140). The timing of events in this case supports an inference that Plaintiff's relationship with Dr. Cole was based more on a desire to support her disability claim than on a "medical need for treatment." 20 C.F.R. 404.1502. Although Plaintiff is correct to point out that Dr. Cole's records do indicate a "problem" with arthritis (Pl.'s Mem. 7, Tr. 250), what Plaintiff fails to acknowledge is the fact that Dr. Cole did not provide Plaintiff with any treatment for this diagnosis. (Tr 250-62). Records from Central North show only that Plaintiff visited Dr. Cole for "routine" management of her blood pressure, and that she "voice[d] no complaints" related to arthritis or any other malady which would prevent her from working an eight hour workday. Furthermore, Plaintiff saw Dr. Cole on only four occasions, and Dr. Cole himself described Plaintiff as "a new patient of Central North." (Tr. 418). Thus, Dr. Cole was simply not in a

position to provide the "detailed, longitudinal picture of the medical evidence" that would entitle his opinion to the presumption of the treating physician rule.

As substantial evidence supports the finding that Dr. Cole is a nontreating physician, the ALJ did not commit error by according more weight to the opinion Dr. Lary, another nontreating physician.

### 2. Even If Dr. Cole Is A Treating Physician, The ALJ Clearly Articulated Good Cause For According Less Weight To His Opinion.

Plaintiff argues that because Dr. Cole was a treating physician, the ALJ failed to accord sufficient weight to his opinion. (Pl.'s Mem. 5). Specifically, Plaintiff contends that the ALJ failed "to properly articulate good cause for according less weight to the opinion of the Plaintiff's treating physician when finding that the Plaintiff was not disabled." (Pl.'s Mem. 5). According to Plaintiff, this alleged failure to articulate good cause constitutes reversible error. *Id.* Even assuming, *arguendo*, that Dr. Cole is a treating physician, in this case the ALJ clearly articulated good cause for giving Dr. Cole's opinion less weight, and this determination was supported by substantial evidence.

As noted previously, the Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). If the ALJ fails to "clearly articulate" good cause for discounting the opinion of the treating physician, such omission constitutes reversible error. *Id*. "Good cause" exists where the opinion of the treating physician is unaccompanied by objective medical evidence or is "so brief and conclusory that it lacks persuasive weight." *Hudson v. Heckler*, 755 F.2d 781 (11th Cir. 1985) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Good cause

11

has also been found where the treating physician's opinion is "inconsistent with [his] own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Shnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987)).

In this case, substantial evidence supports the ALJ's determination that good cause existed for according less weight to the opinion of Dr. Cole. In his MSO, Dr. Cole candidly admits that his opinion regarding Plaintiff's RFC is based primarily upon Plaintiff's subjective complaints rather than objective medical evidence. (Tr. 417). As noted above, a treating physician's opinion may be discounted when it is based wholly on Plaintiff's subjective complaints and "not accompanied by objective medical evidence." *Edwards*, 937 F.2d at 583. Considering that Dr. Cole's treatment records indicate he did not provide Plaintiff with any kind of treatment or medication for her arthritis (Tr. 250-62), his determination that Plaintiff is unable to work an eight hour day due to her disabling arthritis (Tr. 418) is "unsubstantiated by any clinical or laboratory findings." *Bloodsworth*, 703 F.2d at 1240. Furthermore, Dr. Cole's letter is inconsistent with both his treatment records and his MSO completed ten days earlier. The letter states unequivocally that Plaintiff is incapable of completing an eight-hour workday, while the MSO seems to allow for a limited range of light work. (Tr. 416-18). Moreover, Dr. Cole's statement that Plaintiff is unable to work more than six hours out of an eight hour workday "due to the arthritis" is inconsistent with his own treatment records which indicate he did not treat Plaintiff for arthritis, but only provided her with "routine" treatment of her hypertension. (Tr. 255). Indeed, Dr. Cole's treatment records specifically note "no complaints" of the type a discrete ailment such as disabling arthritis might be expected to produce. (Tr. 255). Because good cause exists to discount the opinion of a treating physician when his opinion is inconsistent

with his own medical records, the ALJ did not err in according less weight to the opinion of Dr. Cole. *Lewis*, 125 F.3d at 1440.

> **B.  Substantial Evidence Supports the ALJ's Credibility Determination Regarding Plaintiff's Subjective Pain Testimony.**

Plaintiff's final argument is that the "ALJ failed to properly evaluate the credibility of the Plaintiff's testimony of disabling symptoms consistent with the Eleventh Circuit Pain Standard." (Pl.'s Mem. 9). Essentially, Plaintiff contends that ALJ's reasons for discrediting her pain testimony were not supported by substantial evidence, and therefore her pain testimony must be accepted as true. However, Plaintiff's arguments are unavailing: substantial evidence supports the ALJ's articulated reasons for partially discrediting Plaintiff's subjective pain testimony.

The Eleventh Circuit has established a three-part pain standard for assessing the credibility of a claimant's subjective pain testimony. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1986). The standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such se verity that it can be reasonably expected to give rise to the alleged pain.

*Id.* (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). Once a claimant meets this threshold requirement by presenting subjective pain testimony supported by objective medical evidence, the claimant's subjective testimony is accepted as true unless the ALJ articulates "explicit and adequate reasons" for discrediting such testimony. *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ evaluates the credibility of the claimant's subjective testimony by assessing the record as a whole, as well as evidence of: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to

alleviate pain or other symptoms; (6) any measures Plaintiff uses to relieve pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529, 416.929. *See also* SSR 96-7P (interpreting 20 C.F.R. §§ 404.1529 and 416.929).

The court concludes that substantial evidence supports the ALJ's adverse credibility determination in this case. The ALJ considered the listed factors in Social Security Ruling 96-7p, and articulated several explicit reasons for discrediting Plaintiff's testimony regarding the severity of her pain. For instance, the ALJ found that Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 17). There is ample evidence in the record to support this determination: during her alleged period of disability, Plaintiff was able to take care of herself (Tr. 42), clean her house (Tr. 43), assist in providing care for her grandchildren (Tr. 40, 157), and even look for work as a cook. (Tr. 42). Plaintiff testified that she was capable of picking up her youngest grandson who weighs twenty-five pounds. (Tr. 40). Plaintiff also possessed the mental capacity to focus for three to four hours at a time, as well as read, play Bingo and cards, and complete other such tasks requiring extended periods of concentration. (Tr. 160). In short, the ALJ's specific, articulated reasons for discrediting Plaintiff's testimony are fully supported by evidence in the record.

Furthermore, the ALJ conducted a thorough review of Plaintiff's medical records, and explicitly noted additional reasons for discrediting Plaintiff's subjective complaints of pain. These medical records provide substantial evidence to support the ALJ's credibility determination. As the ALJ correctly points out, "there [are] no objective clinical or laboratory findings to support [Plaintiff's] allegations" that she cannot stand or walk for an extended period of time. (Tr. 16). Dr. Lary examined Plaintiff during her alleged period of disability and noted

"essentially normal range of motion." (Tr. 207). Dr. Lary noted that Plaintiff's arthritis was not treated with any medication or assistive device, and characterized the range of motion in her joints as "preserved." Dr. Lary concluded that despite Plaintiff's complaints, her ability to sit, stand, or walk was "unimpaired." (Tr. 208). Consistent with Dr. Lary's analysis, Dr. Heilpern also found Plaintiff to be capable of walking normally. (Tr. 215). Dr. Heilpern concluded that based on the objective medical evidence, Plaintiff's allegations were only "partially credible." (Tr. 219). Even Dr. Cole, who Plaintiff asserts is a treating physician, provided Plaintiff with no treatment for disabling pain or arthritis. (Tr. 250-62). In sum, the ALJ reviewed the objective medical findings, and then articulated adequate specific reasons for discrediting Plaintiff's subjective complaints of pain.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and the ALJ applied the proper legal standards is arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** on August 15, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE